UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| CITIZENS ALLIED FOR INTEGRITY AND ACCOUNTABILITY, INC., *et al.*, | Case No. 1:17-cv-00264-BLW |
|---|---|
| Plaintiffs, | MEMORANDUM DECISION AND ORDER |
| v. | |
| THOMAS M. SCHULTZ, *et al.*, | |
| Defendants. | |

# INTRODUCTION

Before the Court is Defendants' Motion to Alter or Amend the Judgement or Alternatively, for Partial Relief from the Judgment. Dkt. 43. Plaintiffs oppose the motion. Dkt. 50. The Court will assume familiarity with its Memorandum Decision and Order regarding summary judgment. Dkt. 36. For the following reasons, Defendants' Motion is DENIED.

# BACKGROUND

The Court granted summary judgment to Plaintiffs Rachel Holtry, Charlene Quade, and Citizens Allied for Integrity and Accountability, Inc. in this case. Dkt. 36. Ms. Holtry and Ms. Quade are residential property owners in Fruitland, Idaho. Dkt. 1 at ¶¶ 3-4; Dkt. 12 at ¶¶ 3-4. Both refused to lease their mineral rights to gas operator Alta Mesa. Dkt. 31-3 at 34:15-22; Dkt. 31-5 at 29:6-30:21. Citizens Allied is an Idaho non-

profit corporation composed of, among other people, individuals "whose property was subject to the recent application for spacing and integration orders" at issue in this litigation. Dkt. 1 at ¶ 2. Citizens Allied sued in an "associative and representational capacity … on behalf of its members affected by" the spacing and integration orders at issue in this litigation. *Id.*

The Court will briefly note two other facets of its Memorandum Decision and Order regarding summary judgment. First, the Court determined that Plaintiffs had a protected property interest in the minerals under their land. Dkt. 36 at 12-15. To the extent that the Idaho Oil and Gas Conservation Act ("OGCA") allows forced pooling and integration, the Idaho Department of Lands ("IDL") is required, pursuant to the statute, to establish that the terms afforded to "deemed leased" landowners are "just and reasonable." Idaho Code § 47-320; *see also* Dkt. 36 at 12-15.

Second, as a remedy for Defendants' unlawful conduct, the Court ordered the Idaho Oil and Gas Conservation Commission ("Commission") to rescind its Final Order, which consisted of both a spacing order and an integration order. Dkt. 36 at 22; Dkt. 24-5. Additionally, the Court ordered the Commission to "rescind the lease contracts of Plaintiffs Quade and Holtry … and hold a new hearing that complies with due process by explaining the factors that will be considered when determining whether the terms and conditions of an integration order are 'just and reasonable.'" Dkt. 36 at 22-23.

# LEGAL STANDARD

**1.      Motion to Alter or Amend the Judgment**

Reconsideration of a final judgment under Rule 59(e) is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003) (internal quotation marks omitted). A losing party cannot use a Rule 59(e) motion to relitigate old matters or to raise arguments that could have been raised before the entry of judgment. *See Sch. Dist. No. 1J, Multnomah Cnty. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). As a result, there are four limited grounds upon which a motion for reconsideration may be granted: (1) the motion is necessary to correct manifest errors of fact or law; (2) the moving party presents newly discovered evidence; (3) reconsideration is necessary to prevent manifest injustice; or (4) there is an intervening change in the law. *Turner v. Burlington N. Santa Fe R.R. Co.*, 338 F.3d 1058, 1063 (9th Cir. 2003).

**2.      Motion for Relief from Judgment**

Similar to Rule 59(e), under Rule 60(b), the moving party is entitled to relief from judgment for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud, misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; or (6) any other reason justifying relief from the operation of the judgment. Relief under the "catch-all" provision of Rule 60(b)(6) should be granted only in extraordinary circumstances "as an equitable remedy to prevent manifest injustice,"

*United States v. State of Washington*, 98 F.3d 1159, 1163 (9th Cir. 1996) (internal citation and punctuation omitted).

## ANALYSIS

**1.     Plaintiffs Have A Property Interest in the Minerals Underlying Their Lands**

The thrust of Defendants' Motion relates to the Court's finding that Plaintiffs have a property interest in the minerals underlying their lands. Defendants argue that (1) "[t]he court's decision lacks the required threshold finding that Plaintiffs were deprived of a property right," (2) "[t]here can be no property interest in terms and conditions that can only be determined through exercise of the Commission's discretion," and (3) "[t]he requirement to include 'just and reasonable' terms cannot constitute a property right because it has no ascertainable monetary value." Dkt. 43 at 3, 5, 9. Defendants are wrong on all counts.

### A.     *The Court Made the Required Threshold Finding*

Defendants' first argument is plainly wrong. Section 1C(1) of the Court's Memorandum Decision and Order describes in detail the history and current scope of the property rights held by Plaintiffs in this case. Dkt. 36 at 12-15. Defendants may, and obviously do, disagree with the Court's analysis. But, Rule 59(e) cannot be used to wish away unfavorable portions of a prior opinion simply because the losing party disagrees with a court's reasoning. *See Sch. Dist. No. 1J, Multnomah Cnty.*, 5 F.3d at 1263.

### B.     *The Property Rights Held by Plaintiffs Are Not Discretionary*

Defendants' argument that Plaintiffs do not hold a property right because the right is subject to the Commission's discretion is similarly misguided. Again, this argument rehashes an argument Defendants made during the summary judgment hearing. Dkt. 36 at 15. To recap, it is true that the Commission has discretion to determine exactly what constitutes "just and reasonable" terms and conditions for "deemed leased" landowners. *Id.* But, the OCGA, by its own terms, prohibits the Defendants from reducing the compensation and terms and conditions that "deemed leased" landowners receive to zero. *Id.*

The case law cited by Defendants has little relevance to the present case. Defendants primarily rely on *Town of Castle Rock, Colorado v. Gonzales*, 545 U.S. 748 (2005) to support their argument that "mandatory language [in a statute], when coupled with language allowing the agency to determine *how* to comply with the mandate, does not create a property right." Dkt. 43-1 at 6 (emphasis in original). First, the Court notes that it reviewed and discussed *Town of Castle Rock* in its Memorandum Decision and Order. Dkt. 36 at 15. The Court was not convinced at the time that *Town of Castle Rock* was dispositive in this case; it remains unconvinced.

Second, *Town of Castle Rock*, along with the rest of the case law cited by Defendants on this point, is distinguishable. In each of those cases, the deciding trial and appellate courts wrestled with the question of *whether* a property right had been created

under ambiguous state or local laws.[1] *Town of Castle Rock* is an excellent example. There, the Supreme Court was forced to decide whether an ambiguous Colorado statutory scheme, in and of itself, created a property interest in the enforcement of a restraining order. *Id.* at 765-66. Because (1) plaintiff in *Town of Castle Rock* did "not assert that she ha[d] any common-law … entitlement" to the enforcement of the restraining order and (2) it was not appropriate to read into an ambiguous statute "the creation of a personal entitlement to something as vague and novel as enforcement of restraining orders," the Supreme Court concluded that plaintiff lacked a property interest. *Id.*

Considering the quoted language, *Town of Castle Rock* is distinguishable on a least two bases. First, the enormous body of common-law related to mineral rights, and property law more broadly, uniformly supports the conclusion that Plaintiffs have a protectable property interest in this case.[2] Second, as the Court has repeatedly noted, the

---

[1] This includes *Hammel v. Idaho Cty.*, No. 3:16-cv-00469-EJL, 2018 WL 3758565, at *4 (D. Idaho, Aug. 8, 2018) (holding that Idaho state law did not create a property interest in accurate notices of sale where property seized by the state for tax purposes was subsequently sold at public auction), *James v. Rowlands*, 606 F.3d 646, 656 (9th Cir. 2010) (holding that California state law did not create a property interest requiring child protective services to notify a father that his child had been placed in protective custody), *Doyle v. City of Medford*, 606 F.3d 667, 675 (9th Cir. 2010) (holding that a vague county ordinance and Oregon state law did not create a property interest in post-retirement healthcare for employees), *Shanks v. Dressel*, 540 F.3d 1082, 1091 (9th Cir. 2008) (holding that a neighborhood lacked any property interest in Spokane, Washington's enforcement of municipal ordinances related to historic preservation), *Thornton v. City of St. Helens*, 425 F.3d 1158, 1164-65 (9th Cir. 2005) (holding that wrecking yard operators lacked a property interest in the renewal of their license).

[2] The right of landowners to control the mineral rights beneath the surface of their property has ancient roots. William Blackstone described the extent of rights held by property owners in the following way: "*Cujus est solum, ejus est usque ad coelum*, is the maxim of the law, upwards; therefore no man may erect any building, or the like, to overhang another's land: and, downwards, whatever is in a (Continued)

mineral rights that Plaintiffs hold are hardly "vague or novel" property interests; to the contrary, they are ancient sticks in the "bundle" of property rights held by landowners. *See generally Mishler v. Nevada State Bd. of Med. Examiners,* 896 F.2d 408, 410 (9th Cir. 1990).

Finally, the Court notes that Defendants' position, taken to its logical conclusion, is extraordinary. Idaho has a long history of mining activities by private landholders. Indeed, some of Idaho's earliest cases adjudicated disputes regarding mining rights. Furthermore, mining continues to play a vital role in Idaho's economy. Defendants, on behalf of Idaho's state government, now asserts that they may, in essence, seize a portion of the mineral rights held by Idaho landowners by passing a statute with only the vaguest guarantees of compensation and due process. Then, when Idaho landowners attempt to make good on the process contained in the statute to secure the promised compensation, they are met with an assertion from the Government that they lacked any property interest in their mineral rights to begin with. Aside from contradicting the United States Constitution, the Defendants' position violates the basic promise that Idaho has made to its landowners.

---

direct line between the surface of any land, and the center of the earth, belongs to the owner of the surface; as is every day's experience in the mining countries." 2 WILLIAM BLACKSTONE, COMMENTARIES *18.

### C. *The Property Rights Have an Ascertainable Monetary Value*

Finally, Defendants argue that because "'just and reasonable terms' has no ascertainable monetary value, [they] do[] not rise to the level of a property right … and cannot be the basis for an action brought under 42 U.S.C. § 1983." Dkt. 43-1 at 9. Again, Defendants misapprehend the nature of the property right described by the Court. The property interest is in the mineral rights themselves. Though OGCA limits the value of those rights for property owners in specific circumstances, it still requires that the deemed lease property owners be provided "just and reasonable" compensation and terms and conditions. *See* Idaho Code § 47-320. While "just and reasonable" compensation is not a sum certain, it is a figure larger than zero and is ascertainable through the "deemed leased" landholders' participation in lawful proceedings before the Commission. *Id.* As such, the property interests at issue here meet *Town of Castle Rock's* requirement that property rights in a § 1983 action have an ascertainable monetary value.

### 3. Defendants Must Vacate the Spacing and Integration Orders for *All* Plaintiffs

#### A. *Defendants Must Vacate Both the Spacing Order and the Integration Order*

Defendants next ask the Court to reconsider its decision to vacate both the spacing and integration orders. According to Defendants, Plaintiffs' Complaint and arguments related solely to the integration order and, therefore, the spacing order should remain in place.

The Court begins by noting that Defendants failed to make this argument during the summary judgment proceedings in this case even though it was plainly available to

them at that time. Dkt. 31. It is procedurally inappropriate for Defendants to now raise this argument by way of a Rule 59(e) motion. *Kona Enterprises, Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) ("A Rule 59(e) motion may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." (citation omitted)).

Turning to the merits of the argument, though Defendants are correct that "[s]pacing orders are typically stand-alone orders," in this case Defendants concede that the hearing officer considered the "spacing and integration [orders] … in a single hearing." Dkt. 51 at 9. Individuals wishing to comment on the spacing order were not provided a separate notice and separate forum to air their concerns about the spacing order; instead, they were given one constitutionally deficient hearing in which to voice their concerns about both orders. Furthermore, the Idaho statute regarding spacing orders requires the Commission to consider the "size, shape and location of the units" in relation to the "pool as a whole." Idaho Code § 47-318. Because the Commission must consider issues regarding integration in determining the size of the "pool as a whole," it is necessarily true that the hearing officer's failure in this instance to provide the required procedural due process in considering the issue of integration denied Plaintiffs any meaningful ability to comment on the spacing order. Pursuant to the Court's Memorandum Decision and Order, the Final Order, which is comprised of both the spacing and integration orders, must be vacated.

B. *The Court's Order Applies to All Plaintiffs*

As a last resort, Defendants argue that the Court's order should be limited to vacating the Commission's Final Order solely as to Plaintiffs Quade and Holtry. Dkt. 43-1 at 11. According to Defendants "[t]he Plaintiffs make no effort … to demonstrate that the **_named Plaintiffs_** will not be accorded full relief if the injunction, and any subsequent hearing, is limited to the integration of the mineral interests of the named Plaintiffs." Dkt. 51 at 10 (emphasis in original).

A cursory review of the Complaint reveals that Plaintiffs Quade and Holtry were joined in this suit by Citizens Allied. Dkt. 1. Citizens Allied is composed of "hundreds of members across southern Idaho, including members whose property was subject to the recent application for spacing and integration orders discussed in this complaint." *Id.* at ¶ 2. Citizens Allied brought its "suit in its associative and representative capacity, on behalf of its members affected by the proceedings set forth in this Complaint." *Id.* As such, limiting the Court's order to only Plaintiffs Quade and Holtry will not, despite Defendants argument, "accord[] full relief" to each of the "named Plaintiffs." Dkt. 51 at 10. To the contrary, Citizens Allied, a named Plaintiff in the Complaint, would be left out in the cold. Dkt. 1 at ¶ 2. To the extent that Citizens Allied is comprised of "members whose property was subject to the [Final Order]," those members would share Citizens Allied's fate. *Id.*

## ORDER

Considering the foregoing, it is hereby **ORDERED** that Defendants' Motion to Alter or Amend the Judgement or Alternatively, for Partial Relief from the Judgment (Dkt. 43) is **DENIED**.

DATED: February 1, 2019

B. Lynn Winmill
U.S. District Court Judge