LAWRENCE G. WASDEN
Attorney General
State of Idaho

DARRELL G. EARLY
Deputy Attorney General
Chief, Natural Resources Division

STEVEN W. STRACK (ISB #3906)
JOY M. VEGA (ISB #7887)
KRISTINA N. FUGATE (ISB #9242)
Deputy Attorneys General
Natural Resources Division
Office of the Attorney General
P.O. Box 83720
Boise, Idaho 83720-0010
Telephone: 208-334-2400
Fax: 208-854-8072
E-mail: steve.strack@ag.idaho.gov
        joy.vega@ag.idaho.gov
        kristina.fugate@ag.idaho.gov

*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| CITIZENS ALLIED FOR INTEGRITY AND ACCOUNTABILITY, INC.; CHARLENE QUADE; RACHEL HOLTRY; BRITTANY AND CRISTIAN SANDOVAL, | ) ) ) ) | Case No. 1:17-cv-264-BLW |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | DEFENDANTS' RESPONSE TO |
| | ) | PLAINTIFFS' RENEWED MOTION FOR |
| THOMAS M. SCHULTZ, in his official capacity | ) | AWARD OF ATTORNEY FEES AND TO |
| as Director of the Idaho Department of Lands; | ) | EXTEND THE TIME IN WHICH TO |
| CHRIS BECK, MARGARET CHIPMAN, SID | ) | FILE [Dkt. 55] |
| CELLAN, JIM CLASSEN, and KEN SMITH, | ) | |
| all in their official capacities as members of the | ) | |
| Idaho Oil and Gas Conservation Commission | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

DEFENDANTS' RESPONSE TO PLAINTIFFS' RENWED MOTION FOR AWARD OF ATTORNEY FEES
AND TO EXTEND THE TIME IN WHICH TO FILE - 1

Defendants Thomas M. Schultz, in his official capacity as Director of the Idaho Department of Lands; Chris Beck, Margaret Chipman, Sid Cellan, Jim Classen, and Ken Smith, each in their official capacity as a member of the Idaho Oil and Gas Conservation Commission (collectively "Defendants"), by and through the Office of the Attorney General, their counsel of record, and pursuant to District of Idaho Local Civil Rule 54.2 and Federal Rule of Civil Procedure 54(d), hereby object to Plaintiffs' Renewed Motion for Attorney Fees and to Extend the Time in which to File ("*Pls. Renewed Mot.*") (Dkt. 55). Defendants incorporate herein by reference, in its entirety, Defendants' Response in Opposition to Plaintiffs' Motion for Extension of Time to File Bill of Costs and Motion for Award of Attorney Fees (Dkt. 41).

For the reasons presented herein, Defendants respectfully request that the Court either deny Plaintiffs' motion in its entirety, or reduce the amounts Plaintiffs seek to no more than $70,224 in fees and $228.43 in costs, for a possible total fee award to Plaintiffs of $70,452.43.[1]

## ARGUMENT

### I.  Plaintiffs' motion for attorney fees was originally untimely and without good cause and therefore remains untimely and without good cause.

Plaintiffs have moved for a two-day extension of the time in which to submit their original motion for award of attorney fees and costs. *Pls. Renewed Mot.* (Dkt. 55).[2]  Plaintiffs

---

[1] Defendants base these reductions on Plaintiffs' attorney fees award request of $89,730 for 299.1 hours at a rate of $300 an hour and litigation expenses request of $16,110.20. *Pls. Renewed Mot.* (Dkt. 55); *Mem. Supp. Renewed Mot.* 5, 6 (Dkt. 55-1). This is contrasted with Plaintiffs' request in their memorandum's conclusion asking for reimbursement of only $72,570 in attorney fees for only 241.9 hours and expenses of $16,110.20.  *Mem. Supp. Renewed Mot.* 14 (Dkt. 55-1).

[2] The court denied the motion for attorney fees (Dkt. 40) and motion for extension of time (Dkt. 38) without prejudice. (Dkt. 53, 54).  Plaintiffs have renewed their motion for extension of time (Dkt. 55), which appears to relate back to the untimely filing of their original motion for extension on August 29, 2018.

filed their untimely motion for attorney fees (Dkt. 40) on August 29, 2018, two days after the

August 27, 2018 deadline to file their motion had passed. Plaintiffs' original motion and renewed

motions both were untimely and without good cause because Plaintiffs' filing deadline expired

before Defendants filed their unsuccessful Rule 59 motion.  Additionally, Plaintiffs' lacked good

cause for these untimely filings because Plaintiffs have not shown excusable neglect.

### A. Plaintiffs' motions for attorney fees are still untimely because they were filed after the deadline to file a motion for attorney fees had passed.

Federal Rule of Civil Procedure 54(d)(2) unambiguously mandates that petitions for

attorney fees "must be filed no later than 14 days after the entry of judgment." F.R.C.P.

54(d)(2)(ii).  While a Rule 59 motion filed prior to the deadline for filing a Rule 54 fee motion

can toll the running of the 14 day time period, *Bailey v. Cty. of Riverside,* 414 F.3d 1023, 1025

(9th Cir. 2005), a Rule 59 motion filed after the deadline mandated by Rule54(d)(2) does not

reach back to render timely a motion for fees filed after the 14 day deadline. A denied Rule 59

motion also does not reset the clock, as the Advisory Committee's Notes to Rule 54 provide: "[a]

new period for filing will automatically begin if a new judgment is entered following . . . the

*granting* of a motion under Rule 59." F.R.C.P.  54 Advisory Committee Note (1993) (emphasis

added).

The Ninth Circuit has addressed the issue of "whether [a] Rule 54(d)(2)(B) time limit is

*tolled* pending the outcome of post-trial motions under Rule 50 or Rule 59." *Bailey*, 414 F.3d at

1025 (emphasis added).  In *Bailey*, the defendants filed a Rule 50 motion only six days after the

judgment and before the plaintiffs filed their motion for attorney fees.  Appellant's Opening

Brief, Bailey, 414 F.3d 1023 (9th Cir. 2005) (Nos. 03-56545, 03-57107), 2004 WL 911578 at *1-

2.  The plaintiffs later timely filed their motion for attorney fees 13 days after the court denied

defendants' Rule 50 motion. *Id.* at *1-2, 9. The court reasoned that the Rule 50 motion

"operate[d] to *suspend* the finality of the district court's judgment" and therefore tolled the

deadline to file a motion for attorney fees. *Bailey*, 414 F.3d at 1025. While the court also stated

that a fee petition "is timely if filed no later than 14 days after the resolution of a Rule 50(b),

Rule 52(b), or Rule 59 motion," an already untimely motion for attorney fees filed before a Rule

59 motion was not before that court.

The *Bailey* court made its decision prior to the 2009 revisions to Rule 59 that extended

the filing deadline for a Rule 59 motion from 10 days to 28 days.  *See* F.R.C.P. 59 Advisory

Committee Note (2009) ("Former Rules 50, 52, and 59 adopted 10 day periods for the respective

post-judgment motions").  When Rule 54(d)(2)'s 14 day deadline to file a timely attorney fees

motion passes before a timely Rule 59 is filed, the later filing of the Rule 59 motion cannot "toll"

the time to file a motion for attorney fees because such deadline has already passed.[3]

Here, the court entered judgment on August 13, 2018. (Dkt. 37).  Plaintiffs' 14 day

deadline was August 27.  Plaintiffs filed their untimely motion for attorney fees on August 29,

2018. (Dkt. 40).  Defendants did not file their Rule 59 motion until September 10, 2018 (Dkt.

43), twelve days after Plaintiffs filed their untimely motion for attorney fees.  Further, the court

denied Defendants' Rule 59 motion. (Dkt. 52).  Because Plaintiffs' deadline to file expired

before Defendants' Rule 59 motions and because Defendants' Rule 59 motion was unsuccessful

---

[3] *But see Slep-Tone Entm't Corp. v. Karaoke Kandy Store, Inc.*, 782 F.3d 313, 317 (6th Cir.
2015) (holding the fourteen-day clock does not start until after a Rule 52(b) motion is decided
because no appeal could be filed under Appellate Rule 4(a)(4)(A) until the post-judgment motion
was resolved); *Radtke v. Caschetta*, 822 F.3d 571, 574 (D.C. Cir. 2016) (reasoning that an
amended judgment after a partially successful Rule 59 motion created "[a] new period for filing"
a fee petition.).

so no new judgment was issued and no new filing period was created.  Thus, Plaintiffs' original motion for attorney fees remains untimely.

**B. Plaintiffs did not show they failed to act because of excusable neglect.**

Because Plaintiffs' motion for extension of time was untimely, Plaintiffs *must* show not only good cause for more time, but that their untimely motion for extension was the result of excusable neglect.  Defendants incorporate by reference their prior briefing of this argument (Dkt. 41).

Rule 6(b)(1)(B) provides that the court "may, for good cause, extend the time … on motion made after the time has expired if the party failed to act because of excusable neglect." F.R.C.P. 6(b)(1)(B). "In other words, part of the good cause showing generally required by this Court includes an explanation for why a timely request for additional time *could not* have been made before the expiration of time – i.e., excusable neglect." *Vanorden v. Bannock County*, No. 4:14-cv-00303-REB, 2015 WL 2193803, at *2 (D. Idaho May 11, 2015) (emphasis original).

The Supreme Court has said that "inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect." *Pioneer Investment Servs. v. Brunswick Assoc.,* 507 U.S. 380, 392 (1993).  The Ninth Circuit has adopted the following analysis, which the Idaho District Court has consistently applied in relation to various motions, to determine whether neglect is excusable:

> To determine when neglect is excusable, we conduct the equitable analysis specified in [*Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd.*, 507 U.S. 380, 394 (1993)] by examining 'at least four factors: (1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on the proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith.'

*Lemoge v. U.S.*, 587 F.3d 1188, 1192 (9th Cir. 2009) (quoting *Bateman v. U.S. Postal Service*, 231 F.3d 1220, 1223 (9th Cir 2000)).

The third element of the *Pioneer* analysis should prevent the court from granting Plaintiffs' motion for extension of time. Here, Plaintiffs do not assert that both a request for additional time and the motion for fees and bill of costs *could not have* been timely filed with the court. They simply lament that such filings were not done because counsel got busy and did not read the governing Rules for such motions. (Dkt 38-2 ¶¶ 6, 7, 9). Plaintiffs' reasons for the delay cannot lower the bar for excusable neglect before this court. Being too busy to follow the Rules should not be confirmed as an acceptable showing of good cause to extend the time for filing due to purported excusable neglect. "Otherwise, every overworked attorney will be justified in missing a deadline." *Vanorden*, 2015 WL 2193803, at *2.

## II. Defendants' request the court eliminate fees unreasonably expended and expert fees that are precluded by law.

In federal civil rights actions, "the court, in its discretion, may allow the prevailing party. . . a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). Once the district court determines a party is entitled to fees, the court must determine a reasonable amount of fees. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Courts use the Lodestar method to determine a reasonable fee, which begins by determining "the number of hours *reasonably expended* on the litigation multiplied by a reasonable hourly rate." *Id.* (emphasis added).

A district court sets a reasonable attorney's fee by making "specific findings as to the rate and hours it has determined to be reasonable." *Gracie v. Gracie*, 217 F.3d 1060, 1070 (9th Cir. 2000) (quoting *Frank Music Corp. v. Metro-Goldwyn Mayer Inc.*, 886 F.2d 1545, 1557 (9th Cir. 1989)). The moving party "bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley*, 461 U.S. at 437.

## A. Plaintiffs' fees for its motions for extension of time were not reasonably expended and therefore should not be awarded.

The Supreme Court has instructed that "'[h]ours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority.'"   *Hensley*, 461 U.S. at 434 (quoting *Copeland v. Marshall*, 641 F.2d 880, 891 (D.C. Cir. 1980) (emphasis in original)).

On August 29, 2018, sixteen days after entry of judgment, Plaintiffs filed an untimely motion for attorney fees (Dkt. 40), along with a motion for extension of time (Dkt. 38).  As Plaintiffs' counsel admitted in the motion for extension of time, missing the deadline for attorney fees "would almost certainly be found by a court to be negligence" and "[t]here can be no doubt that Plaintiffs' Counsel is guilty of neglect in this matter."   *Pls. Br. Supp. Mot. Extension Time* 2, 3, fn.1 (Dkt. 38-1).

Despite counsel's admissions that the delay in filing the motion for attorney fees was negligent, Plaintiff seeks to charge Defendants for unjustifiable time spent on these motions.  It is difficult to believe Plaintiffs' attorney would bill a client that "is itself blameless for this delay." *Id.* at 3.  Additionally, by the same token such fees should not be sought from Defendants.  Indeed, the Eighth Circuit held that it was unreasonable for the opposing party to pay fees for time spent requesting extensions of time. *Steele v. Van Buren Pub. Sch. Dist.*, 845 F.2d 1492, 1496 (8th Cir. 1988).  The total time expended on the August 2018 motion for extension of time was 6.5 hours for a total of $1,950. *Ex. 1* 5-6  (Dkt. 55-3) (Includes: 3.5 hours on 8/29/18 for "Drafted e-mail to opposing counsel; motion for extension of time; memorandum in support of motion for extension; declaration in support of motion"; 3 hours on 8/29/18 for "research rule 6(b) and draft declaration re extension").[4]  Thus, Defendants request the court

---

[4] Following this court's order (Dkt. 52) resolving Defendants' Rule 59 motion, Plaintiffs filed a "renewed" motion for extension of time with their motion for attorney fees (Dkt. 55-1) that relates back to their original motion.  Plaintiffs have not yet submitted a request for time spent on

reduce the fee award by at least $1,950 for the 6.5 hours spent on the first motion for extension and reduce the final award by whatever additional time was spent on the second motion for extension of time.  This would reduce the total amount of claimed attorney fees to $87,780.

Further, the parties submitted a joint motion for extension of time on December 19, 2017, to modify the Case Management Order to allow Plaintiffs additional time to respond to discovery. *Joint Mot. Modify Case Management Order* 2 (Dkt. 17).  Plaintiffs billing for that motion for extension of time totals 1.6 hours (Includes: 36 minutes on 12/18/17 for "Telephone conference with Deputy Attorney General, draft stipulation to extend time; research contention interrogatories;"[5] 24 minutes on 12/19/17 for "review stipulation, draft proposed order to extend;" 18 minutes on 12/20/17 for "revise stipulation and proposed order to extend"; 18 minutes on 1/5/18 for "check status of motion to extend, call Metcalf, Telephone conference with Christina"). Therefore, Defendants further request the court reduce the claimed amount of attorney fees by $480 to $87,300.

## B.  The court should deny attorney hours spent on this case that were not reasonably expended.

The "results obtained" is a factor probative to the reasonableness of a fee award and "subsumed within the initial calculation of the lodestar amount." *Cunningham v. Cty. of Los Angeles*, 879 F.2d 481, 486 (9th Cir. 1988).  Courts ask two questions in determining whether the amount of hours billed were reasonable in light of the results obtained. *Hensley*, 461 U.S. at 434.  First, the court determines whether the counsel's work on a prevailing claim is unrelated to

---

the second motion for extension, but if they do submit a request, any additional fees should be denied for the same reasons stated herein as to the original motion (Dkt. 38).

[5] It is unclear whether "research contention interrogatories" is related to the motion for extension of time, but Defendants have included the total amount of time here because no separate amount of time is indicated to differentiate it from the time spent on the draft stipulation.

work on unsuccessful claims. *Id.* Second, the court determines whether the plaintiff achieved "a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award." *Id.* "There is no precise rule or formula for making these determinations." *Id.* at 436. Courts should exclude "hours that are excessive, redundant, or otherwise unnecessary." *Id.* at 433–34.

As to the first question, a plaintiff is not entitled to a fee award for unsuccessful claims that are "unrelated to" her successful claims. *Hensley*, 461 U.S. at 435. Claims are "unrelated" when they are "entirely distinct and separate" from the claims on which the plaintiff prevailed. *Webb v. Sloan*, 330 F.3d 1158, 1168–69 (9th Cir. 2003). Here, while Plaintiffs' claims all involved a common core of facts, the legal theories pursued by Plaintiffs did not, as discussed in more detail below, necessarily bear any relation to the decision ultimately reached by the court.

As to that second question regarding the "results obtained," a court determines whether the plaintiff achieved a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award. Determination of results obtained takes into account that "[a]lthough the plaintiff often may succeed in identifying some unlawful practices or conditions, the range of possible success is vast." *Hensley*, 461 U.S. at 436. The district court may "identify specific hours that should be eliminated, or simply reduce the award to account for the limited success." *Id.*

Here, Plaintiffs' requested attorney's fees should be reduced given Plaintiffs' complete lack of success on the majority of claims they asserted. The majority of Plaintiffs' claims were withdrawn. Plaintiffs' complaint asserted facial and as-applied claims that the Oil and Gas Conservation Act violated substantive due process, violated procedural due process, violated equal protection, and was arbitrary and capricious. *Compl.* 7, 8 (Dkt. 1). Plaintiffs also sought

monetary damages from Defendants. *Id.* at 8; *Pls. Summ. J. Br.* 23 (Dkt. 23-1). At no point did Plaintiffs provide any facts to support their claims that the Act violated substantive due process, equal protection, or was arbitrary and capricious.  However, Plaintiffs still waited until their response brief to withdraw their equal protection claim. *Pls. Summ. J. Resp. Br.* 10-11 (Dkt. 30). Additionally, the Plaintiffs waited until oral argument to state that their due process claims were as applied rather than facial challenges.  *Mem. Dec.* 7 (Dkt. 36); *See also Pls. Summ. J. Br.* at 2 ("The OGA itself fails to provide due process.").

Moreover, Plaintiffs' arguments at the summary judgment stage were centered upon the assertion that the statutory provision to include "just and reasonable" terms was "rate setting" that required Plaintiffs be awarded additional monetary compensation.  *Pls. Summ. J. Br.* at 17–22 (*e.g.*, "Plaintiffs were entitled to a decision that considered the economic impacts on all parties, including . . . an attempt to ensure that sellers such as Plaintiffs received fair compensation for the risks (financial and otherwise) that they were required to undertake." (Dkt. 23-1 at 22)); *Pls. Summ. J. Resp. Br.* at 5-7 (*e.g.*, "There is substantial evidence that the 1/8 royalty is in fact confiscatory." (Dkt. 30 at 6)); *Pls. Summ. J. Reply Br.* at 6–10 (*e.g.*, "Defendants claim that they could not alter price or payment terms…." (Dkt. 33 at 7)). This assertion plainly contradicts the applicable state statute, and had so little merit that Plaintiffs' counsel "conceded at the hearing that consideration of 'just and reasonable' terms does not include the compensation rate." *Mem. Dec.* at 16 fn.11 (Dkt. 36). Indeed, the Court's decision on summary judgment solidified Plaintiffs' concession about altering the compensation rate by impliedly approving the concession and stating that "most of [Plaintiffs'] property interest—the royalty and bonus payment—is guaranteed and unalterable." *Mem. Dec.* at 17 (Dkt. 36).

In this case, Plaintiffs' time does not detail what percentage of time they dedicated to each unsuccessful claim while drafting their complaint and motion for summary judgment. Fee applicants "should exercise 'billing judgment' with respect to hours worked . . . and should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims." *Hensley*, 461 U.S. at 437.[6] That lack of detail makes it difficult to determine what percentages of time were spent on those unsuccessful and withdrawn claims.

However, Plaintiffs' briefs indicate that approximately 20% of Plaintiffs' briefing was dedicated to the assertion that they were due additional compensation.  *Pls. Summ. J. Br.* at 17–22 (Dkt. 23-1); *Pls. Summ. J. Resp. Br.* at 5–7 (Dkt. 30); *Pls. Summ. J. Reply Br.* at 6–10 (Dkt. 33).[7] Thus, Defendants request that the court reduce Plaintiffs' request for attorney fees by at least 20% to account for time unnecessarily spent addressing eventually withdrawn and unsuccessful claims, including the unwarranted assertion that the Due Process clause requires that "just and reasonable" terms was "rate setting."   A 20% reduction would reduce the remaining fees to $69,840.

## C.  Plaintiffs' expert witness costs are not recoverable under 42 U.S.C. § 1988.

Courts may not award expert fees in an action that is based only on 42 U.S.C. § 1983. 42 U.S.C. § 1988(c); *Ruff v. Cty. of Kings*, 700 F. Supp. 2d 1225, 1243 (E.D. Cal. 2010).  Expert witness fees are only recoverable by contract or express statutory authority. *Crawford Fitting Co.*

---

[6] Further, the court may decide to reduce the requested fee based on the lack of specificity of the amount of time spent on each task. *See Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2000) (district courts may reduce hours where requests lack detail).

[7] Defendants previously requested a 25% reduction because approximately 25% of Plaintiffs' summary judgment briefing was dedicated to this assertion. *Def. Resp. Pls. Mot. Att'y Fees* 6, 7 (Dkt. 45) Defendants acknowledge that Plaintiffs did not assert that compensation could be changed in Plaintiffs' response to Defendants' Rule 59 motion (Dkt. 50). Thus, Defendants have adjusted the requested percentage reduction to take into account the additional briefing.

*v. J.T. Gibbons, Inc.,* 482 U.S. 437, 439 (1987).  In 1991, the Supreme Court held that section

1988's provision for a "reasonable attorney's fee" did not allow for the recovery of expert

witness fees. *West Virginia Univ. Hosps. v. Casey*, 499 U.S. 83 (1991).  That same year,

Congress responded by amending § 1988 to add subsection (c), which, as codified, provides:

> In awarding an attorney's fee under subsection (b) of this section in any action or
> proceeding *to enforce a provision of section 1981 or 1981a*, the court, in its discretion,
> may include expert fees as part of the attorney's fee.

42 U.S.C. § 1998(c) (emphasis added).[8]  As amended, section 1988 expressly provides that

attorney's fees may only include expert fees in actions under section 1981 or 1981a.  It does not

mention section 1983.

Here, Plaintiffs did not bring an action under section 1981 or 1981a; their action was

brought solely under section 1983.  However, Plaintiffs have requested expert fees of $8,685.00

for Dr. Ronald Throupe's expert report and $5,207.50 for Dr. Throupe's deposition preparation.

Both costs are expert fees.  Because 42 U.S.C. § 1988(c) and United States Supreme Court

precedent do not allow expert fees to be awarded in an action based solely on section 1983, the

court cannot award Plaintiffs their requested expert fees.  Defendants request that the court

reduce Plaintiffs' request for costs by $13,892.50.[9]

Also, Plaintiffs have already requested $1,989.30 in their Bill of Taxable Costs. (Dkt.

39).  Plaintiffs note that those costs are duplicated in their renewed motion for attorney fees.

*Mem. Supp. Pls. Renewed Mot.* at 6 (Dkt. 55-1).  Because those costs are already accounted for,

---

[8] Pub. L. 102-166, Sec. 113, 105 Stat. 1071, 1079 (Nov. 21, 1991); *see also Landgraf v. USI Film Prod.*, 511 U.S. 244, 251 (1994) (finding that § 113 was passed in response to the *West Virginia Univ. Hosps.* decision).
[9] Defendants already cited this law in their prior briefing. *Resp. Pls. Mot. Att'y Fees* 8 (Dkt. 45). However, Plaintiffs request expert fees again. This request is still precluded by law. Defendants thus request that the court consider additionally reducing Plaintiffs' requested hours for attorney fees briefing to account for time unnecessarily spent on an argument precluded by law.

Plaintiffs' request for additional costs should be reduced by an additional $1,989.30.  Thus, costs

other than those set forth in the Bill of Costs should only be allowed in the amount of $228.43.

## CONCLUSION

Defendants respectfully request that the court deny Plaintiffs' renewed motion in its

entirety. Alternatively, Defendants respectfully request that the court reduce Plaintiffs' requested

attorney's fee award to reflect the number of hours *reasonably expended* on the litigation

multiplied by a reasonable hourly rate for each attorney. Defendants request the court reduce the

requested attorney's fee award of $105,840.23 by at least the following adjustments:

- Reduce the total amount of attorney fees requested ($89,730.00) by $2,430 for
  time spent on motions for extension of time ($89,730.00 - $1,950 - $480 =
  $87,300);

- Reduce the remaining overall fee ($87,300) by at least 20% ($17,460) to account
  for time unreasonably expended pursuing claims that had no basis in law or fact
  $87,300 - $17,460 = $69,840); and

- Reduce the requested costs to $228.43 to eliminate expert fees that cannot be
  awarded and to eliminate taxable costs requested elsewhere.

Defendants' suggested adjustments would result in an award of no more than $69,840 in attorney

fees and $228.43 in costs, for a possible total fee award to Plaintiffs of $70,068.43.

DATED this 1st day of March, 2019.

/s/     Kristina N. Fugate

STEVEN W. STRACK
JOY M. VEGA
KRISTINA N. FUGATE
Deputy Attorneys General

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of March, 2019, I caused the foregoing to be electronically filed with the Court using the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

> James M. Piotrowski
> james@idunionlaw.com
>
> Marty Durand
> marty@idunionlaw.com

| /s/ | Kristina N. Fugate |
|---|---|
| | STEVEN W. STRACK |
| | JOY M. VEGA |
| | KRISTINA N. FUGATE |
| | Deputy Attorneys General |